THE ATLANTIC, GULF AND PACIFIC COMPANY, *v.* GOVERNMENT OF THE PHILIPPINE ISLANDS.

APPEAL FROM AND ERROR TO THE SUPREME COURT OF THE PHILIPPINE ISLANDS.

No. 64. Argued December 6, 1910.—Decided December 19, 1910.

A Government contract for building a bulkhead in Manila provided that the contractor would be responsible for damages arising from wave action or pressure of the revetment against the timber structure, but that the Government would be responsible for break caused by pressure of the mud fill. There was a break owing to pressure of the mud fill and before it could be repaired there was a further damage caused by a typhoon but which would not have happened had the original break not existed. *Held*, as held by the courts below, that the contractor must bear the loss caused by the typhoon.

THE facts, which involve the construction of a contract

for a public work with the Government of the Philippine Islands, are stated in the opinion.

*Mr. James Russell Soley*, with whom *Mr. H. C. Dickinson* was on the brief, for appellant and plaintiff in error:

A demurrer should not be sustained if, upon any fair and liberal interpretation, a cause of action can be implied from the averments of the complaint. *Lockhart* v. *Leeds*, 195 U. S. 427, 435; *Swift & Co.* v. *United States*, 196 U. S. 375, 395; *Coatsworth* v. *Lehigh Valley R. Co.*, 156 N. Y. 451, 457; *Olcott* v. *Carroll*, 39 N. Y. 436; *Naylor* v. *N. Y. C. & H. R. R. R. Co.*, 119 App. Div. 22, 28; *People* v. *New York*, 28 Barb. 240, 248; *Ketchum* v. *Van Dusen*, 11 App. Div. 332.

Plaintiff has pleaded a series of averments from which a cause of action may be clearly inferred. Even if freely admitted that the pleading is inartificially drawn and in some points is obscure and contains apparent contradictions, it clearly appears that the work which was the subject of this contract suffered serious injury by reason of the pressure of the fill upon the enclosing bulkhead and under the terms of the contract, the defendant, the Government of the Philippine Islands, was required to pay for the repairs to the structure so caused and that the work was done at reasonable and proper prices.

The break of May 1, 1906, due to the pressure of the fill upon the enclosing bulkhead, was the proximate cause of the subsequent injury to the work, for the repair of which compensation is demanded in the complaint.

The question here is that of proximate cause and the pressure of the fill is distinctly pleaded as the proximate cause of the injuries both of May 18–19 and of May 1. *Mil. & St. Paul R. Co.* v. *Kellogg*, 94 U. S. 469, 474; *Insurance Co.* v. *Boon*, 95 U. S. 117, 130; *Insurance Co.* v. *Tweed*, 7 Wall. 44; *The G. R. Booth*, 171 U. S. 450, 460.

The court will take judicial notice of familiar natural

phenomena and of natural laws which are matters of general knowledge, such as those of meteorology, physical geography, wave action and the prevalent liability to typhoons in the waters surrounding the Philippine archipelago, and known climatic conditions. *McGhee Irrigating Ditch Co.* v. *Hudson,* 21 S. W. Rep. 125; *The Conqueror,* 166 U. S. 110, 134. The interval of a fortnight or so between the proximate efficient cause and the ultimate result is of no importance. See *Insurance Co.* v. *Boon, supra.*

The liability of the defendant is not affected by paragraph 5 of the specifications.

The responsibility of the contractor for damages, arising from wave action as an independent cause, so far as it is based on paragraph 5 of the specifications, is expressly limited to certain specific forms of damage, and leaves the responsibility for other resultant damages subject to the general rule.

The supplemental agreements constitute an important additional support for plaintiff's cause of action.

The question of ambiguity is in the contract, and not in the pleading.

If the provisions of the contract are ambiguous and require interpretation they cannot be settled by demurrer. If failure to state a cause of action is due in any respect to latent ambiguities in the contract, plaintiff can introduce evidence to remove these ambiguities. *Clay* v. *Field,* 138 U. S. 464, 480.

Plaintiff cannot be deprived of the right to show whether he has a cause of action or not.

*Mr. Assistant Attorney General Denison* for the appellee, and defendant in error:

As the break of May 28 was due directly to wave action and pressure of the revetment, and as those specific causes are charged upon the contractors by the express terms of the contract, no further inquiry into prior contributing

causes can be had. · *Dudgeon* v. *Pembroke*, L. R. 2 App.
Cas. 284, 297; *S. C.*, L. R. 9 Q. B. 581, 595; *Wilson* v.
*The Xantho*, L. R. 12 App. Cas. 503, 509; *Insurance Co.*
v. *Adams*, 123 U. S. 67; *Liverpool Steam Co.* v. *Phœnix
Ins. Co.*, 129 U. S. 397, 438; *Northwest Transp. Co.* v.
*Insurance Co.*, 41 Fed. Rep. 793, 800; 2 Arnould on Mar.
Ins., 6th ed., 737, 753; Hildyard, Mar. Ins. 269.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an action upon a contract for an extension to the
Luneta of the city of Manila. Both courts below decided
for the Government, the defendant, upon demurrer to
the complaint. Abridged, the allegations are these: A
contract for the work was made on July 24, 1905. On
May 1, 1906, about 200 feet of bulkhead and rock revet-
ment were displaced by pressure from the inside fill and
moved about twenty feet into the Bay of Manila, so that
a large quantity of the fill that had been pumped behind
the bulkhead escaped into the bay. On May 18, before
the break could be repaired, a severe typhoon occurred,
and the bulkhead and rock revetment, being without the
support of the inside fill, were destroyed for about 1800
feet by the pressure of the rock revetment and the wind
and waves from the outside, and a large additional quan-
tity of the inside fill escaped. The question is which party
must bear the last-mentioned loss. If the first break had
not happened no damage would have been done by the
typhoon. The plaintiff sets forth the cost of repairing
the damages of May 18 and seeks to recover it in this suit.

The specifications of the contract contain the follow-
ing:

"5. The contractor will be responsible for damages to
the bulkhead and revetment arising from wave action or
from pressure of the revetment against the timber struc-
ture; but if a break is caused by pressure resulting from

the mud fill, the repairs to the structure will be paid for by the Government at the prices specified in the contract; provided that the specifications have been fully complied with."

"12. . . . All losses of dredged material from the fills, excepting those due to failure of the bulkheads from pressure of the mud fill as stated in Article 5, will be measured as carefully as conditions will permit and the computed amounts deducted from the statement for the final payment."

On May 24 a supplemental contract was signed. It recited that the repairs made necessary by the break of May 1 ought to be paid for by the Government; that the original project was modified so as to fill the space that had given way with rock, with clay, etc., for the interstices; and that the change would either increase or diminish the cost. It then agreed that the plaintiff should make the repairs and the Government would pay the actual and reasonable cost, with certain qualifications, plus fifteen per centum, which last was to cover all other items, including profit. This referred to the first damage only. On the next day, May 25, the Government director telegraphed to Commissioner Forbes "For most of typhoon damage I hold contractors responsible; they claim Government responsible for all on account delay repairing first break, but wish to make repairs in manner authorized for first break leaving settlement of liability to be determined later. Repairs should be made at once, but in view of contract requirement . . . do not see how contractors can be authorized proceed before determination of liability." The answer approved "authorizing contractors to proceed immediately to make repairs on lines indicated, with the understanding that all rights reserved in regard to adjudication of liabilities." These telegrams were communicated to the plaintiff, and it was authorized to proceed to make repairs in the manner outlined in the agree-

ment of May 24. It did so and the Government now refuses to pay.

It will be understood that this case is in no way concerned with the possible difference in cost between the mode of repair adopted and that which might have been followed under the original contract. The question here is which party is responsible for the repairs, assuming no such difference to exist. We need not consider whether the effect of all that we have recited was or was not to substitute the new mode and new cost for the old as that which the parties left at risk when they agreed that the plaintiffs should go on and do the work. If the plaintiff should have any claim for the excess alone, if any, over the cost that would have been incurred under the original plan it is not suing for it here.

Both sides found their case on the division of losses made by the specification quoted. On the one hand, the accident would not have happened but for the pressure from the mud fill, on the other, the more immediate cause was wave action and the pressure of the revetment against the timber structure, the effects of which the contractor was to bear. We agree with the court below that the contractor must bear the loss. The question is not whether the responsibility of the Government might not have extended to the later consequences had it originally been a wrongdoer, and had it been sued in tort. The question is to what extent did the Government assume a risk which, but for the contract, would not have fallen upon it at all. The contract qualified the relation only cautiously and in part. If the break was caused by pressure from the mud fill the Government agreed to pay for repairs to the structure. That was all.

But for the addition in 12 quoted above it might be doubted whether 'structure' meant anything but the bulkhead and revetment. But Article 12 extends the Government liability to loss of dredged materials due to

such a break.   It is suggested that the reason for the Government undertaking was that the plan was made by the Government engineers.   It may have been.   But the plaintiff was content to work upon that plan; it, not the Government, was doing the work, and it took the risk so far as the contract did not make a change.   The Government could not be charged by it with negligence or with causing the first break.   That was only something for repairing which the Government had promised to pay. Whatever the Government had not promised to pay for the contractor had to do in order to offer the completed work which it had agreed to furnish.   The case is stronger for the Government than those upon policies of insurance where courts refuse to look behind the immediate cause to remoter negligence of the insured.   *General Mutual Insurance Co.* v. *Sherwood,* 14 How. 351, 366; *Orient Insurance Co.* v. *Adams,* 123 U. S. 67; *Dudgeon* v. *Pembroke,* 2 App. Cas. 284, 295.   Here, as we have said, the plaintiff cannot charge the defendant with negligence, the immediate event was one of which the plaintiff took the risk, on general principles of contract it took that risk unless it was agreed otherwise, and it does not matter to the result whether we say that we cannot look farther back than the immediate cause, or that the undertaking of the Government did not extend to ulterior consequences, not specified, of the break for repairing which it undertook to pay, but which it did not cause.

*Judgment affirmed.*