## REA v. HEINER, Collector of Internal Revenue.

(District Court, W. D. Pennsylvania. July 9, 1925.)

No. 3261.

**1. Internal revenue ⊛⟿8 — Presumption of transfer in contemplation of death rebuttable.**

Presumption, under Revenue Act 1918, § 402, par. (c), being Comp. St. Ann. Supp. 1919, § 6336¾c, of transfer by decedent, without consideration of material part of property within two years prior to death, being in contemplation of death, *held* shown rebuttable by use in the statute of the words "unless shown to the contrary."

**2. Internal revenue ⊛⟿8—Essentials of "transfer in contemplation of death."**

For transfer to be in contemplation of death, within Revenue Act 1918, § 402, par. (c), being Comp. St. Ann. Supp. 1919, § 6336¾c, the general knowledge of all that they must die is not enough, but there must be a present apprehension, from some existing bodily or mental condition or impending peril, creating a reasonable fear that death is near at hand, and, so arising, it must be direct and animating and only cause of the transfer, and without such apprehension there is not such contemplation, especially when another adequate motive actuating the gift is shown.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Transfer in Contemplation of Death.]

**3. Internal revenue ⊛⟿38—Presumption of gift in contemplation of death held rebutted.**

Deceased's sound condition, mentally and physically, her active participation in important affairs, her expressed belief that she would live to a very old age, her preparations for improvement of farm and home, in connection with animating motives shown for her gift to her daughter, *held* to conclusively rebut and overcome the presumption under Revenue Act 1918, § 402, par. (c), being Comp. St. Ann. Supp. 1919, § 6336¾c, of the transfer being in contemplation of death.

At Law. Action by Edith Oliver Rea, executrix of Edith Anne Oliver, deceased, against D. B. Heiner, Collector of Internal Revenue. Judgment for plaintiff.

Henry Oliver Evans, Edwin W. Smith, and Reed, Smith, Shaw & McClay, all of Pittsburgh, Pa. (L. L. Hamby and Roper, Hagerman, Hurrey & Parks, all of Washington, D. C., and William A. Seifert, of Pittsburgh, Pa., of counsel), for plaintiff.

Walter Lyon, U. S. Atty., and Warren H. Van Kirk, Sp. Asst. U. S. Atty., both of Pittsburgh, Pa., and Leroy L. Hight, Sp. Atty. Bureau of Internal Revenue, of Washington, D. C., for defendant.

THOMSON, District Judge. This is an action brought by Edith Oliver Rea, executrix of the will of Edith Anne Oliver, to recover against D. B. Heiner, collector of internal revenue for the Twenty-Third district of Pennsylvania, the sum of $2,849,858.79, with interest as hereinafter set forth, being the amount of certain taxes paid under protest, and which, it is averred, were illegally collected by the defendant. By stipulation filed, the parties agreed to waive a jury, the issues of fact to be tried and determined by the court.

Certain testimony was taken at the trial, from which I find the following facts:

Henry W. Oliver died in February, 1904, leaving a large estate, consisting of real estate and personal property. Under his will, dated January 25, 1904, a trust was created in behalf of his widow, Edith Anne Oliver, and his daughter, Edith Oliver Rea, wherein George T. Oliver, Henry R. Rea, and the Union Trust Company of Pittsburgh were appointed trustees of the property. The trustees were given very ample powers, and continued to transact the business connected with the estate during the period of the trust, which extended for 10 years. The beneficiaries under the trust were each entitled to one-half of the income of the property during its continuance, and the principal of the estate was to be divided between them at the termination of the trust.

Near the termination of the period of the trust, the work which the trustees had in mind and on hand in connection with certain buildings had not been completed, and it was concluded to form a trust for another period of 5 years, which was done. The trustees under the new trust were the same, with the addition of Edith Oliver Rea. Before the termination of this trust, which was in February, 1919, George T. Oliver, who had been the active trustee, died. On the 24th day of December, 1918, the said Edith Anne Oliver assigned and transferred to Edith Oliver Rea, by deed of gift of that date, all her right, title, and interest in stocks, bonds, and personal property fully designated in the instrument of transfer, valued by the Commissioner at $10,306,089.49, a copy of which deed of transfer is attached to and made a part of the statement of claim. This conveyance was followed by the delivery of said

personal property to the donee and the proper transfer thereof on the books of the issuing corporations; the said donee thus becoming the sole owner of said property, possessing and controlling the same and receiving for her sole use the interest and income therefrom.

A few days later, to wit, on the 27th day of December, 1918, the said Edith Anne Oliver executed jointly with her said daughter another deed of trust, wherein she assigned, transferred, and delivered possession to the Union Trust Company of Pittsburgh, as trustee, for the benefit of her granddaughter, Edith Anne Rea, certain bonds of the United States which she owned, valued by the Commissioner at $144,965.63, a copy of said indenture being attached to the plaintiff's statement of claim. The said Edith Anne Oliver died on the 28th day of July, 1919, leaving her last will and testament, wherein she appointed the said Edith Oliver Rea sole executrix. The will was duly admitted to probate, and the said executrix accepted the appointment as executrix, and in that capacity makes claim in this action.

On July 2, 1920, the plaintiff, as executrix, made the federal estate tax return required by law, but did not return the property embraced in the two aforesaid gifts, but, in order that the said collector might be informed of the facts, made a report to him, as part of the return, setting forth the dates and circumstances of the two transfers above mentioned, made by the said Edith Anne Oliver in her lifetime. The Commissioner of Internal Revenue claimed federal taxes as due upon said gift, transferred as aforesaid, on the ground that such transfers were made by the decedent in contemplation of her death, and that the transfers were therefore taxable under the federal estate tax law. Demand being made for the payment of such taxes, the plaintiff, while insisting that neither of said transfers was made by decedent in contemplation of her death, and that neither was subject to taxation under the Revenue Act of 1918, for the purpose of avoiding the interest, penalties, and seizures threatened, the tax so demanded was paid by the plaintiff, to recover which, with interest, this action is brought.

The gift to Mrs. Rea came about in this way: Mrs. Rea, being greatly interested in the activities connected with the war, in the latter part of 1917, went to Washington and devoted her whole attention to war work, particularly in connection with the Walter Reed Hospital, taking over the Red Cross work in connection with that institution, and

having a large force under her, caring at times for nearly 4,000 wounded soldiers. After the Armistice, this number was greatly increased by returning soldiers, which largely augmented the work at the hospital, with the result that Mrs. Rea was unable to leave Washington for some months thereafter. Mrs. Oliver, while greatly interested in her daughter's work, with the approaching end of the war, greatly regretted her absence from Pittsburgh, was very anxious for her return, fearing that the attractions of the capital might wean her away from Pittsburgh. She also found that Mrs. Rea would not have sufficient income to meet her expensive entertainments and large charitable gifts, both of which she strongly approved. In the fall of 1918, George T. Oliver, the most active of the trustees, became so seriously ill that he informed Mrs. Oliver and her daughter that he could no longer give active attention to the trust, which would terminate in February, 1919, and that arrangements would have to be made to relieve him. The mother and daughter then determined that the simplest solution of the matter would be a gift by the mother of her interest in the personal properties covered by the trust, which resulted in the execution of the gift of December 24, 1918.

As Mrs. Oliver desired, this movement brought Mrs. Rea back into the activities of Pittsburgh. After her return, she opened an office in the city, became chairman of the board of directors of the Oliver Iron & Steel Company, which involved other corporations, and took a very active part in the companies whose stock was included in the gift. Mrs. Oliver, at the time of her death in July, 1919, was 76 years of age. All her life she had been very active in body and mind, mentally alert, quick of judgment, and in all matters in which she was interested of very positive opinion. While slight of body, she was uniformly sound and well, with no serious illness in her lifetime. She had a habit for years of seeing her physician frequently, such visits being largely sociable, and all examinations, extending over a period of years, disclosed that her organs were sound and her condition normal. Her disposition was cheerful and optimistic, never depressed or melancholy. She rarely spoke of death, and was impressed with the idea that she would live as long as her mother, who died at the age of 92.

On July 26, 1919, while in normal health, she executed a new will; the only change from the former being to provide for the contingency of Mrs. Rea's death before her own, her daughter being the sole beneficiary in both. Immediately prior to her fatal illness, she was carrying on her usual activities. The week before she died, she drove to Pittsburgh three times, was preparing to go to Canada for the summer, making arrangements for building a boathouse and sea wall there, and for changing the barn and building a dairy on the farm at home. On Saturday she drove to Sewickley and did her shopping. On Sunday morning she suffered a severe attack of acute indigestion, later lapsed into unconsciousness, and died on Monday from ptomaine or septic poisoning, probably caused from eating veal. At the time of her death, she had a personal estate of $600,000 or $700,000 and real estate of the value of $7,500,000. After the gifts in question, her income was $300,000 or $400,000 per year. For the keeping up of her household and all personal needs, she expended about $50,000 annually, and had in bank at the time of her death about $200,000, being accumulations from her income.

The tax in this case was assessed under section 402, paragraph (c), of the Revenue Act of 1918, the relevant part of which provides as follows:

"Sec. 401. That a tax equal to the sum of the following percentages of the value of the net estate (determined as provided in section 403) is hereby imposed upon the transfer of the net estate of every decedent dying after the passage of this act. ° * °

"Sec. 402. That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated. * * *

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death (whether such transfer or trust is made or created before or after the passage of this act), except in case of a bona fide sale for a fair consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such a consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title."

Comp. St. Ann. Supp. 1919, §§ 6336¾b, 6336¾c.

[1] It is, of course, clear that the gifts were a material part of Mrs. Oliver's property, in the nature of a final distribution or disposition of the property included in the gifts, and without a fair consideration in money or money's worth; and, the gifts being made within two years prior to the donor's death, a presumption arises under the statute that the gifts were made in contemplation of death. That this is a rebuttable presumption is conclusively shown by the use in the act of the words "unless shown to the contrary." This is a presumption of fact, which casts the burden of proof upon the plaintiff.

[2] Under the authorities the words "in contemplation of death" have a distinctive meaning. Lord Mansfield once said: "We all have in us the seeds of mortality. But 'contemplation of death' is not the general knowledge of all men that they must die at some time."

In Spreckels v. State, 30 Cal. App. 363, 158 P. 549, the court said: "A reasonable and just view of the law in question is that it is only where the transfer of property by gift is immediately and directly prompted by the expectation of death, that the property so transferred becomes amenable to the burden; or, as counsel for the respondents with singular aptness states the proposition: 'It is only when contemplation of death is the motive without which the conveyance would not be made, that a transfer may be subjected to the tax.' That is, the expectation of death must be the direct, specific, and immediate animating cause of the transfer."

In State v Pabst, 139 Wis. 561, 121 N. W. 351, the court said: "It is manifest that [the words] were intended to cover transfers of parties who were prompted to make them by reason of the expectation of death, and which, in view of that event, accomplished transfers of the property of decedents in the nature of a testamentary disposition. It is therefore obvious that they are not used as referring to that expectation of death generally entertained by every person. The words are evidently intended to refer to an expectation of death which arises from such a bodily or mental condition as prompts persons to dispose of their property and bestow it on those whom they regard as entitled to their bounty."

In Shwab v. Doyle, 269 F. 321, the Circuit Court of Appeals said: "On principle, and without reference to authority, the ultimate question concerns the motive which actuated the grantor; that is to say, whether or not a specific anticipation or expectation of her own death, immediate or near at hand (as distinguished from the general and universal expectation of death sometime), was the immediately moving cause of the transfer."

In Meyer v. United States (not yet reported) the Court of Claims said: "If it be said that there need not be a conviction that death is imminent, there must be at least a belief that it is to be expected in the very near future, rather than in the usual course of events, and in this state of mind, in this belief, in the near approach of death, must be found the motive for the conveyance if it is properly to be characterized as made in contemplation of death."

In harmony with these opinions may be cited Armstrong v. State (Conway's Estate) 72 Ind. App. 303, 120 N. E. 717, Rosenthal v. People, 211 Ill. 306, 71 N. E. 1121, Trust Co. v. Treasurer and Receiver General, 209 Mass. 373, 95 N. E. 851, Commonwealth v. Fenley, 189 Ky. 480, 225 S. W. 154, and many other cases.

These principles have been applied with great uniformity in the adjudicated cases, both in the state and federal courts. There is a common agreement that the words "contemplation of death" mean not the general knowledge of all men that they must die; that it must be a present apprehension, from some existing bodily or mental condition or impending peril, creating a reasonable fear that death is near at hand; and that, so arising, it must be the direct and animating cause, and the only cause, of the transfer. If this apprehension, so arising, is absent, there is not that contemplation of death intended by the statute, especially when another adequate motive actuating the gift is shown.

[3] Applying these legal principles to the case in hand, I reach without difficulty the conclusion that the gifts in question made by Mrs. Oliver were not made in contemplation of death. Her sound condition, mentally and physically; her active participation in important affairs; her expressed belief that she would live to a very old age; the preparation she was making for extensive improvements on her farm and at her home in Canada— all these, in connection with the animating motives for the transfer hereinbefore found to exist, conclusively rebut and overcome the presumption of the statute.

I have not discussed the question of the constitutionality of the statute, particularly with reference to its retroactive provision, which plaintiff's counsel strongly urged in

argument. The facts of the case render such consideration unnecessary.

Conclusions of law:

1. The gifts of Edith Anne Oliver, made by writing dated December 24 and December 27, 1918, hereinbefore specifically designated, were not made by her in contemplation of or intended to take effect in possession or enjoyment at or after her death.

2. The property which was the subject of the gifts was not subject to taxation as part of the estate of the said Edith Anne Oliver under the Revenue Act of 1918, and the collection thereof was without authority of law.

3. The plaintiff is entitled to recover against the defendant in this action the sum of $2,849,858.79, with interest thereon from the dates when the respective payments thereof were made, as set forth in the statement of claim.

Let judgment be entered accordingly.