## LAND TITLE & TRUST CO. v. McCAUGHN, Collector of Internal Revenue.
### No. 13020.

District Court, E. D. Pennsylvania.
April 10, 1934.

Benjamin O. Frick, of Philadelphia, Pa., for plaintiff.

P. E. Miller, of Washington, D. C., and Thomas J. Curtin, Asst. U. S. Atty., and Charles D. McAvoy, U. S. Atty., both of Philadelphia, Pa., for defendant.

KIRKPATRICK, District Judge.

This is a suit at law brought by the plaintiffs as executors of the estate of Dr. Malcolm MacFarlan to recover an inheritance tax in the amount of $29,937.07 with interest as claimed, paid by them, after audit and revision of their return by the Commissioner of Internal Revenue. The trial was to the court without a jury.

The controversy arises out of a transfer of property made by the decedent during his lifetime, creating an irrevocable trust for his children. The indenture of trust was executed one year and ten months before the decedent's death, was without consideration, and conveyed practically all his property.

The only question involved is whether or not the transfer was in contemplation of death. The opinion of the court in United States v. Wells, 283 U. S. 102, 51 S. Ct. 446, 451, 75 L. Ed. 867, is a complete and authoritative interpretation of the phrase "in contemplation of death." After pointing out that the expression means something more than the general expectation of death which all entertain, and something less than a present apprehension that death is near at hand,[1] the court observed that the dominant purpose of the provision was to reach substitutes for testamentary dispositions, and, following that thought, announced the general rule that a transfer is in contemplation of death when the motive which induces it is of the sort which leads to testamentary disposition. The differentiating factor, between a transfer in contemplation of death and a valid gift inter vivos, must therefore be found in the transferor's motive.

If the transfer is of a material part of the decedent's property without consideration and made within two years prior to his death, the statute (Revenue Act 1926, § 302 (c), as amended, 26 USCA § 1094 (c), provides that it shall be deemed to have been made in contemplation of death, "unless shown to the contrary." The burden is then upon the taxpay-

---

[1] In holding that there may be a transfer in contemplation of death, although there is no apprehension arising from bodily or mental condition that death is imminent, the Supreme Court impliedly overruled Commissioner of Internal Revenue v. Nevin (C. C. A. 3) 47 F.(2d) 478, and expressly overruled Rea v. Heiner (D. C.) 6 F.(2d) 389, upon which the court in the Nevin Case relied. I believe, therefore, that the Nevin (Wanamaker) Case no longer can be taken as the law for this circuit.

er to show that the motive is not "of the sort which leads to testamentary disposition," and it has come to be pretty generally recognized by the courts that he can meet this burden only by showing affirmatively what the motive was. Further, it follows that the burden is not met if a motive is disclosed which is as consistent with a testamentary disposition of his property as with a gift inter vivos; or if two motives are disclosed, either of which might have accounted for the transfer, the one testamentary and the other not. Farmers' Loan & Trust Company v. Bowers (C. C. A.) 68 F.(2d) 916.

The age, physical condition, and state of mind of the transferor are always important, but never ultimate, considerations, being useful only to the extent that they throw light on the motive. Expectation of imminent death would be strong evidence that the motive was testamentary but not necessarily conclusive or irrefutable, while on the other hand "it cannot be said that the determinative motive is lacking merely because of the absence of a consciousness that death is imminent." United States v. Wells, supra.

With regard to the decedent's physical condition and state of health, the evidence in this case shows that at the time of the transfer he was seventy-eight years old, unusually vigorous and clear-minded, and, except for an enlargement of the prostate gland (a common enough condition in men of his age), in good health. The most that the plaintiffs can claim for this evidence is that it establishes that the transfer was not made under any consciousness or belief or apprehension that death was imminent. In order that the plaintiffs may have the full benefit of this testimony, I specifically find that such was the fact.

There was also some evidence as to the motivating cause of the transfer. I have no doubt that the decedent's desire to conserve his property for his children, that is, to dispose of it in such manner that it could not be dissipated by them after they came into the possession of it, was a factor of importance in his decision to place his estate in trust. He had before him the lesson of what had occurred long before in connection with the estate of his wife's father. A trust created in that estate had been set aside, and his wife's brothers had subsequently spent or lost the money which they received thereby. When his wife died in 1913, he and all the children by a deed inter vivos had placed their respective interests in trust for the purpose of avoiding the possibility of a repetition of the misfortune.

But it seems to me that those considerations have to do almost exclusively with limiting the beneficiaries' power over the interest transferred and might motivate a will just as well as a conveyance inter vivos. A purpose to conserve the estate against mistakes, errors of judgment, or inexperience of its beneficial owners is not in the least inconsistent with an intention to make its transfer a substitute for testamentary disposition. It has been the motivating cause for writing wills in countless instances. Even assuming that it is the dominant or sole purpose, I can think of no reason which would require it to be carried out by a deed rather than by a will, unless it be that the donor mistrusts his own ability to take care of his property until his death and wishes to put it out of the way of dissipation by himself as well as his heirs. I am sure that no one would suggest that this was the case with Dr. MacFarlan.

And, whether or not they amounted to a "motive," there were other things present in this decedent's mind beside the desire to conserve his estate. Dr. Douglas MacFarlan, a son, testified that his father, in conversing with him, discussed the question of inheritance taxes "often, often, often." Dr. Douglas MacFarlan, in referring to these conversations with his father, said: "He knew perfectly well that if he lived for two years that the inheritance tax would not be charged against the estate. * * * He knew the situation intimately about the tax." Of course I agree with the plaintiff that it would be absurd to hold that knowledge that a large inheritance tax would be exacted unless avoided, or even discussion of that situation, goes very far to show that a transfer is made in contemplation of death, and perhaps evidence of that fact does not in this case add much to the whole picture in view of the fact that it is quite evident that the decedent was a man of business acumen, thrift, and foresight. Still, the government did not offer it, but it was adduced by the plaintiffs as a part of a case designed to show affirmatively that the motive for the transfer was inconsistent with a contemplation of death. Whatever force it has is in the opposite direction. It must also be remembered that it comes from an interested witness. Dr. MacFarlan impressed me as scrupulously truthful, but he could not be expected to enlarge upon any unfavorable feature of his case.

Then it also appears that the decedent executed a will on the same day upon which the transfer was made. It was probably the intention to dispose by it only of property which he might acquire thereafter, for he had

placed in trust everything that he had at that time. This fact is not of great importance, as the motive for the trust deed might still have been testamentary or otherwise. It is only of value in showing that he could not have been entirely oblivious of the approach of death when he executed the deed of trust, and it is suggestive of a complete and final disposition, not only of the property which he had, but of all which he might acquire thereafter until his death—certainly not inconsistent with a general testamentary scheme.

It is my conclusion that the plaintiffs have failed to show that the motive that induced this transfer, whatever it was, was not of the sort which leads to testamentary disposition, and, consequently, have failed to meet the burden of proof placed upon them by the statute.

The defendant's fifth, sixth, ninth, twelfth, thirteenth, and fourteenth requests for conclusions of law are affirmed. As to the remaining points, the views of the court are set forth in the foregoing opinion, which may be taken as the court's answers to such points.

The plaintiffs' requests for conclusions of law are all denied.

A general verdict in favor of the defendant is entered.

Judgment may be entered for the defendant.