**WILLCUTS, Collector of Internal Revenue, v. STOLTZE.**

No. 9916.

Circuit Court of Appeals, Eighth Circuit.

Nov. 5, 1934.

Carlton Fox, Sp. Asst. to Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and J. L. Monarch and Walter L. Barlow, Sp. Assts. to Atty. Gen., on the brief), for appellant.

Francis D. Butler, of St. Paul, Minn. (William Mitchell, of St. Paul, Minn., on the brief), for appellee.

Before BOOTH, Circuit Judge, and MUNGER and BELL, District Judges.

BOOTH, Circuit Judge.

This is an appeal from a judgment in favor of plaintiff, appellee, in an action brought against appellant to recover, with interest, an amount paid by appellee and his coexecutor, under protest, as estate taxes upon the estate of Fred H. Stoltze.

A jury was duly waived and the case was tried to the court.

Fred H. Stoltze, a resident of Hennepin county, Minn., died May 21, 1928, testate, leaving an estate admittedly subject to probate, amounting to over $1,425,000 in value at the date of his death.

On or about February 1, 1929, the executors of the will of deceased duly made return for federal estate taxes.

Prior to his death, said Fred H. Stoltze had made four alleged gifts of property as follows:

"Item (1). On March 30, 1927, he gave forty-nine (49) shares of the capital stock of F. H. Stoltze Securities Co. (a corporation) to John R. Stoltze. John R. Stoltze is the only son of Fred H. Stoltze. The value of said stock at the date of death of Fred H. Stoltze was $972,670.58.

"Item (2). On March 30, 1927, he gave two (2) shares of the capital stock of F. H. Stoltze Securities Co., to Grace B. Stoltze. Said Grace B. Stoltze is the wife of John R. Stoltze. The value of said stock at the date of death of Fred H. Stoltze was $39,700.84.

"Item (3). On April 15, 1927, he gave to John R. Stoltze two hundred fifty thousand dollars ($250,000) face amount of accounts receivable due him from State Lumber Company, a corporation. The value of said accounts at the date of death of Fred H. Stoltze was $250,000.00.

"Item (4). On May 5, 1927, he and the other stockholders of F. H. Stoltze Securities Co., caused said corporation to transfer to Mrs. Maud A. Chadwick five hundred (500) shares of the preferred stock of United States Steel Corporation owned by it. Mrs. Maud A. Chadwick is the sister of the deceased wife of Fred H. Stoltze. The value of said stock (ex-dividend) at the date of death of Fred H. Stoltze was $72,125.00, and a dividend amounting to $875.00 had theretofore been declared on it, making a total value, including said dividend of $73,000.00."

The executors of the will of said Fred H. Stoltze, in making their said return, did not include the value of the four gifts above stated in the gross estate or in the net estate, but they reported that said gifts had been made and said:

"These transfers were absolute. No money payment in return for them was made. It is, however, the position of the representatives that they were not made in contemplation of death or to take effect on death, and opportunity is requested to present evidence in support of this claim. It is further the position of the representatives that the provision of the revenue act of 1928, to the effect that all transfers made within two years are conclusively presumed to have been made in contemplation of death, is unconstitutional and void."

The Commissioner of Internal Revenue determined that the value of the four gifts should be included in the gross estate; and the proper procedure having been taken, the executors paid, under protest, the estate taxes upon the increased assessment as fixed by the Commissioner; and duly filed a claim for refund of said amount, with interest. This claim being rejected, the present suit was brought.

Several of the matters in issue set out in the pleadings and litigated in the trial court have either been expressly or tacitly agreed upon by the parties, and are not pressed in this court: (1) The amount which should be recovered by plaintiff in case a recovery is allowed; (2) the validity of the several gifts in question so far as concerns the requisites for a valid gift inter vivos; (3) the unconstitutionality of that part of section 302 (c) of the Revenue Act of 1926 (26 USCA § 1094 (c) which provided that all gifts of over $5,000 in value, made within two years prior to death, "shall be deemed and held to have been made in contemplation of death within the meaning of this chapter." See Heiner v. Donnan, 285 U. S. 312, 52 S. Ct. 358, 76 L. Ed. 772.

The remaining principal question which is presented to this court is whether the four gifts were made by the donor in contemplation of death, and, therefore, properly included by the Commissioner in the gross estate.

The statutes and the regulations of the Treasury which are deemed applicable are set out in the margin.[1]

---

[1] Revenue Act of 1926, c. 27, 44 Stat. 70, § 302 (c), 26 USCA § 1094 (c):

"Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated— * * *

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Where within two years prior to his death but after the enactment of this Act [February 26, 1926], and without such a consideration the decedent has made a transfer or transfers, by trust or otherwise, of any of his property, or an interest therein, not admitted or shown to have been made in contemplation

The Revenue Acts prior to 1926 had contained provisions that all gifts of a material amount made within two years of death should be deemed to have been made in contemplation of death "unless shown to the contrary."

A similar provision was also contained in section 302 (c) of the Revenue Act of 1926, but was limited to gifts made prior to the enactment of the act. The gifts involved in the case at bar were made after the enactment of the 1926 Revenue Act. It has been assumed, however, since the 1926 Revenue Act was, as to this particular point, an amendment of prior law, that the rebuttable presumption of the prior laws was still applicable; and the burden of proof has been assumed by the plaintiff.

At the close of all the evidence, defendant, by motion timely made, moved for judgment in his favor on the ground that there was no substantial evidence to support any other conclusion. This motion was overruled and exception taken.

The findings of the trial court which are specially involved are: The last sentence of finding III:

"Said gifts were in each case by outright conveyance and took effect in possession and enjoyment forthwith on their several dates."

And finding IV as follows:

"Said Fred H. Stoltze was not in contemplation of death at the time of said four gifts were made.

"None of said four gifts was made by him in contemplation of death.

"The three gifts to John R. Stoltze and his wife (Items 1, 2 and 3) were made simultaneously with the return of John R. Stoltze to Minneapolis and with his assumption of important responsibilities in the conduct of his father's business, and were made on account of that return, to give the son an interest or stake in the business he was to manage, and to insure his continued interest in it. A subordinate purpose of these gifts was to divide the property and its income among three taxpayers and so to reduce the total income taxes payable on account of it.

"The fourth gift, to Mrs. Maud A. Chadwick, was made by Fred H. Stoltze in order to carry out the wishes of his wife, then recently deceased, who was Mrs. Chadwick's sister, and to insure to Mrs. Chadwick an immediate income."

Findings of fact made by the trial court in an action at law, a jury having been duly waived, have the force and effect of a verdict by a jury. Even where proper and timely motion has been made, as in the case at bar, such findings will not be set aside if the record contains substantial evidence in their support. United States v. Perry, 55 F.(2d) 819 (C. C. A. 8); White v. United States (C. C. A.) 48 F.(2d) 178; Blair v. United States, 47 F.(2d) 109 (C. C. A. 8); Federal Intermediate Credit Bank of Omaha v. L'Herisson, 33 F.(2d) 841 (C. C. A. 8); Akre v. Liberty State Bank of Minneapolis, 24 F.(2d) 816 (C. C. A. 8); 28 USCA §§ 773, 875 and 879.

The court, upon this appeal, is accordingly limited to the inquiry whether the record contains substantial evidence that the gifts in question were not made in contemplation of death.

The meaning of the phrase "in contemplation of death," as it is used in the federal taxing statutes, has received careful consideration by the courts.

---

of or intended to take effect in possession or enjoyment at or after his death, and the value or aggregate value, at the time of such death, of the property or interest so transferred to any one person is in excess of $5,000; then, to the extent of such excess, such transfer or transfers shall be deemed and held to have been made in contemplation of death within the meaning of this chapter. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death but prior to the enactment of this Act [February 26, 1926], without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this chapter."

Treasury Regulations 70 relating to estate tax under the Revenue Act of 1926: "Art. 16. Nature of transfer.—The words 'in contemplation of death' do not mean, on the one hand, a general expectation of death such as all persons entertain, nor, on the other, is the meaning limited to an expectation of immediate death. A transfer, however, is made in contemplation of death wherever the person making it is influenced to do so by such an expectation of death, arising from bodily or mental conditions, as prompts persons to dispose of their property to those whom they deem proper objects of their bounty. Such a transfer is taxable, although the decedent parts absolutely and immediately with his title to and possession and enjoyment of the property."

The purpose of including gifts made in contemplation of death as part of decedent's taxable estate was to prevent the evasion of estate taxes. The legislation is directed at gifts made before death but which are testamentary in character or in purpose.

In the case of Milliken v. United States, 283 U. S. 15, 23, 51 S. Ct. 324, 327, 75 L. Ed. 809, the court said:

"It is sufficient for present purposes that such gifts are motivated by the same considerations as lead to testamentary dispositions of property, and made as substitutes for such dispositions without awaiting death, when transfers by will or inheritance become effective. Underlying the present statute is the policy of taxing such gifts equally with testamentary dispositions, for which they may be substituted, and the prevention of the evasion of estate taxes by gifts made before, but in contemplation of, death. It is thus an enactment in aid of, and an integral part of, the legislative scheme of taxation of transfers at death."

In United States v. Wells, 283 U. S. 102, 51 S. Ct. 446, 450, 75 L. Ed. 867, the meaning of the words "in contemplation of death" received careful analysis by the court, and helpful tests were laid down for determining whether a gift was made in contemplation of death. The court, speaking by Chief Justice Hughes, said (page 115 of 283 U. S., 51 S. Ct. 446, 451):

"While the interpretation of the phrase has not been uniform, there has been agreement upon certain fundamental considerations. It is recognized that the reference is not to the general expectation of death which all entertain. It must be a particular concern, giving rise to a definite motive. The provision is not confined to gifts causa mortis, which are made in anticipation of impending death, are revocable, and are defeated if the donor survives the apprehended peril. Basket v. Hassell, 107 U. S. 602, 609, 610, 2 S. Ct. 415, 27 L. Ed. 500. The statutory description embraces gifts inter vivos, despite the fact that they are fully executed, are irrevocable and indefeasible. The quality which brings the transfer within the statute is indicated by the context and manifest purpose. Transfers in contemplation of death are included within the same category, for the purpose of taxation, with transfers intended to take effect at or after the death of the transferor. The dominant purpose is to reach substitutes for testamentary dispositions and thus to prevent the evasion of the estate tax. Nichols v. Coolidge, 274 U. S. 531, 542, 47 S. Ct. 710, 71 L. Ed. 1184, 52 A. L. R. 1081; Milliken v. United States, 283 U. S. 15, 51 S. Ct. 324, 75 L. Ed. 809. As the transfer may otherwise have all the indicia of a valid gift inter vivos, the differentiating factor must be found in the transferor's motive. Death must be 'contemplated,' that is, the motive which induces the transfer must be of the sort which leads to testamentary disposition. * * *

"As the test, despite varying circumstances, is always to be found in motive, it cannot be said that the determinative motive is lacking merely because of the absence of a consciousness that death is imminent. It is contemplation of death, not necessarily contemplation of imminent death, to which the statute refers. It is conceivable that the idea of death may possess the mind so as to furnish a controlling motive for the disposition of property, although death is not thought to be close at hand. Old age may give premonitions and promptings independent of mortal disease. Yet age in itself cannot be regarded as furnishing a decisive test, for sound health and purposes associated with life, rather than with death, may motivate the transfer. The words 'in contemplation of death' mean that the thought of death is the impelling cause of the transfer, and while the belief in the imminence of death may afford convincing evidence, the statute is not to be limited, and its purpose thwarted, by a rule of construction which in place of contemplation of death makes the final criterion to be an apprehension that death is 'near at hand.'

"If it is the thought of death, as a controlling motive prompting the disposition of property, that affords the test, it follows that the statute does not embrace gifts inter vivos which spring from a different motive. * * * The purposes which may be served by gifts are of great variety. It is common knowledge that a frequent inducement is not only the desire to be relieved of responsibilities, but to have children, or others who may be the appropriate objects of the donor's bounty, independently established with competencies of their own, without being compelled to await the death of the donor and without particular consideration of that event. There may be the desire to recognize special needs or exigencies or to discharge moral obligations. The gratification of such desires may be a more compelling motive than any thought of death.

"It is apparent that there can be no precise delimitation of the transactions embraced

within the conception of transfers in 'contemplation of death,' as there can be none in relation to fraud, undue influence, due process of law, or other familiar legal concepts which are applicable to many varying circumstances. There is no escape from the necessity of carefully scrutinizing the circumstances of each case to detect the dominant motive of the donor in the light of his bodily and mental condition, and thus to give effect to the manifest purpose of the statute."

Opinions along the same general lines as in the Wells Case, but not in such clear or comprehensive terms, were rendered by several inferior federal courts in cases prior to the Wells Case.

In the case of Flannery v. Willcuts, 25 F.(2d) 951, 953, this court, speaking by Judge Lewis relative to the phrase "in contemplation of death," used the following language:

"We are also in accord with counsel's statement in his brief that the cases 'hold that the thought of death must be the actuating motive without which the gift would not have been made'—adding thereto the qualification that the 'thought of death' as an anticipation of the inevitable which we all realize, is not within the statute; but to be within the statute the thought must arise because of some known infirmity which, it is believed, will likely cause death. We agree with Judge Morton that gifts inter vivos are not taxable under this statute, unless it can be said on the facts of the case they are testamentary in purpose. Bradley v. Nichols (D. C.) 13 F.(2d) 857."

In the case of Shwab v. Doyle, 269 F. 321, 328, the Circuit Court of Appeals for the Sixth Circuit approved the following instruction given by the trial court:

"By the term 'in contemplation of death' is not meant on the one hand the general expectancy of death which is entertained by all persons, for every person knows that he must die. * * * On the other hand, the meaning of the term is not necessarily limited to an expectancy of immediate death or a dying condition. * * * The term 'in contemplation of death' involves something between these two extremes. Nor is it necessary, in order to constitute a transfer in contemplation of death, that the conveyance or transfer be made while death is imminent, while it is immediately impending by reason of bodily condition, ill health, disease, or injury, or something of that kind. But a transfer may be said to be made in

contemplation of death if the expectation or anticipation of death in either the immediate or reasonably distant future is the moving cause of the transfer."

Subsequent to the Wells Case, the inferior federal courts have endeavored to apply the tests given in that case to the many differing states of facts presented rather than to re-examine and restate the meaning of the phrase "in contemplation of death." Holdings have been made that the gift was not made in contemplation of death where the impelling motive was found to be to reduce income taxes [Vaughan v. Riordan [D. C.] 280 F. 742; Safe Dep. & Trust Co. v. Tait (D. C.) 3 F. Supp. 51]; or a natural desire to aid the donor's children [Llewellyn v. United States (D. C.) 40 F.(2d) 555; Delaware Trust Co. v. Handy (D. C.) 53 F.(2d) 1042]; or to reward the donor's sons for working in his business [Off v. United States (D. C.) 35 F.(2d) 222]; or to induce a return from a distant place and take up the donor's business [Rea v. Heiner (D. C.) 6 F.(2d) 389]. Evidence that a donor had made plans for the future has been held persuasive. Commissioner of Internal Revenue v. Nevin (C. C. A.) 47 F.(2d) 478. Desire to discharge a moral obligation was expressly recognized in the Wells Case as a possible motive negativing contemplation of death.

Furthermore, it must be borne in mind that the presumption of the statutes in force prior to the Revenue Act of 1926 and assumed to be still in force in the case at bar is a rebuttable one.

In the case of Flannery v. Willcuts, supra, this court, speaking of the presumption of the statute in a case similar to the one at bar, said (quoting approvingly from Wigmore on Evidence, § 2491):

"Nevertheless, it must be kept in mind that the peculiar effect of a presumption of law (that is, the real presumption) is merely to invoke a rule of law compelling the jury to reach the conclusion in the absence of evidence to the contrary from the opponent. If the opponent does offer evidence to the contrary (sufficient to satisfy the judge's requirement of some evidence), the presumption disappears as a rule of law, and the case is in the jury's hands free from any rule."

The court further said:

"In Mobile, J. & K. C. Railroad Co. v. Turnipseed, 219 U. S. 35, 31 S. Ct. 136, 55 L. Ed. 78, 32 L. R. A. (N. S.) 226, Ann. Cas. 1912A, 463, a State statute which raised

a presumption of negligence where damages were inflicted by the running of locomotives or cars was under consideration. The court (page 43 [31 S. Ct. 138]) said:

" 'The only legal effect of this inference (of negligence) is to cast upon the railroad company the duty of producing some evidence to the contrary. When that is done the inference is at an end, and the question of negligence is one for the jury upon all of the evidence.' "

We have considered the cases cited by defendant, including the recent case of Land Title & Trust Co. v. McCaughn (D. C.) 7 F. Supp. 742. They recognize the same tests as the cases we have cited; but the differing states of facts presented have naturally led to different conclusions.

The salient facts shown by the record in the case at bar may be summarized as follows: Fred H. Stoltze, a resident of Minneapolis, Minn., died testate at the age of sixty-nine years on May 21, 1928. He survived two wives. John R. Stoltze is his son by his first wife and the sole beneficiary and surviving executor of his will.

During his lifetime, the decedent acquired a large fortune in the lumber and sawmill business, and during the latter part of his life he enjoyed a substantial income from stocks and bonds in addition to the profits from his business.

### Physical Condition of Decedent.

On April 24, 1918, decedent was examined by his physician, Dr. Nippert. His records showed:

" * * * Physical examination was negative; blood pressure was 175; urinalysis showed a trace of sugar."

There were no other records by Dr. Nippert for the year 1918. On January 16, 1919, the record indicated a urinalysis showing sugar. Other examinations in 1919 and 1920 also showed sugar in the urine.

In August, 1923, decedent developed cystitis, or inflammation of the bladder. This is not a progressive disease.

In June, 1924, decedent had an attack of neuritis, visited Rochester, Minn., twice, and in June, 1925, had a cordectomy operation performed. His condition was improved, and he also became sugar free.

In April, 1926, decedent had his tonsils removed.

No professional calls are shown by the record during the year 1927 until September 8th, when the cystitis recurred. Urinalysis showed no sugar but some pus.

The record shows no professional calls from October 28, 1927, until February 13, 1928.

February 17, 1928, was the beginning of the last illness of decedent. He died May 21, 1928.

For many years prior to his death, decedent had the condition known as interstitial nephritis. This is a progressive disease usually existing in older people, especially if there is diabetes, and may exist for thirty years or upwards. According to the best memory of the physician, this condition of interstitial nephritis was not even mentioned to decedent because the diabetes was considered the far more important thing.

### Occupations and Pursuits of Decedent.

Decedent was a busy, energetic man. He had helped build up and had become connected with numerous businesses, mostly relating to the manufacture and sale of lumber. Each of the companies in which he was interested had its own active manager, but decedent exercised financial control and dictated the policies thereof. During the years 1926 and 1927, decedent was particularly active in his business. He was at his office regularly when in the city, oftentimes both morning and afternoon. He did not confine his attention to indoor matters. One witness testifies to a trip he made with decedent to Montana in 1924 to look after the laying out of a town site in connection with a lumber plant. The witness states that by reason of the walking about through the woods, he (the witness) was "all in," but that decedent would sit up half of the night talking to the manager.

Matters outside of business also occupied the attention of decedent. He was interested in hunting, fishing, golf, bridge, and the raising of orchids. Hunting and golf were discontinued after the operation at Rochester in 1925, which had left him somewhat lame, but the other occupations were kept up during 1926 and 1927.

In 1927 he became specially interested in the raising of orchids. He made purchases of them in that year and further purchases as late as January, 1928, and ordered the latter shipment to be made from California in May, 1928. These purchases were of seedlings which would require three to five years to become mature orchid plants. Decedent told his florist in charge of his green-

house that he was "going to turn the whole place into orchids."

### The Gifts and the Recipients.

Two of the gifts were made in March, 1927; one in April, 1927; one in May, 1927. The recipients were the decedent's son, his son's wife, and the sister of decedent's deceased wife.

The son was born in 1895. His early training and education are not set out in the record. It appears that he went to France, and on his return was discharged in Texas; that he found a job in Shreveport, and continued working at various jobs in the oil industry for about eight years. He visited his father at Rochester in 1925 at the time of his father's operation. Some talk was then had between them at that time about the son coming north to take part in the father's business. This move was doubtless hastened by the death of Mr. Landmark, the right-hand man or confidential secretary of Fred H. Stoltze, which occurred in the summer or early fall of 1926.

Beginning in the latter part of October, 1926, the son took an active part in the businesses of his father and assumed added responsibilities as he acquired familiarity. He was made a director in the F. H. Stoltze Securities Company, one of the larger companies, in October or November, 1926; became secretary of the company early in 1927; approved of the transfer from that company to Mrs. Chadwick of the shares in the United States Steel Company.

As early, at least, as 1924, Fred H. Stoltze had in mind having his son return north and take over part of the work. He had mentioned this to the witness Lang on their trip to Montana. The same plan was again mentioned to the same person in the fall of 1926, before the return of the son.

In December, 1926, Fred H. Stoltze had discussed with the witness Doney the gifts a little later made to John R. Stoltze and his wife. Mr. Doney testified:

"That along in December, 1926, the question was advocated of dividing Mr. Stoltze's property, so that his income would be divided in order to effect a saving in income taxes; that the substance of Mr. Stoltze's conversations at that time was that he wanted to divide his property, to reduce taxes, and then he wanted to give Jack a substantial interest in the business so as to give him a real working interest to make it worth while for him to come to Minneapolis and be interested in the business."

As to the gift to Mrs. Chadwick, Mr. Doney testified:

"That in the spring of 1927 he talked with F. H. Stoltze regarding a proposed gift of stock of the United States Steel Corporation to Maud A. Chadwick; that the substance of the conversation was that Mr. Stoltze had always wanted to do something for Mrs. Chadwick, his wife's sister and since his wife had died early that spring, Mr. Stoltze said he believed he would go ahead and make the gift now; that he intended to do it, and when she was gone, he was going to do it."

Mr. Chadwick, husband of the donee, Mrs. Chadwick, testified that he, Mr. F. H. Stoltze, and Mrs. Chadwick talked about the gift to Mrs. Chadwick at the Union Station in Chicago when Mr. Stoltze and his son were on their return from Florida; that Mr. F. H. Stoltze told him that he wanted Mrs. Chadwick to have the income from the gift immediately; and, further, that Mr. Stoltze said that he was going to arrange so that in case anything happened to him (the witness), Mrs. Chadwick could have the same income as if he were still employed.

The gifts were made in March, April, and May, 1927. Mrs. Fred H. Stoltze had died in January, 1927. For some time Mr. Stoltze was naturally much depressed. Yet after his return to Minneapolis from Florida in the spring of 1927, he was at his office practically every morning attending to business, and this continued during the summer except when he was on fishing trips. He was interested in his usual pursuits, and did not require the attention of a physician.

The foregoing testimony as to the bodily and mental condition of the donor at the time the gifts were made, and for a reasonable time before and after that time; the testimony that the donor, during the same period of time, continued to take an active interest in many of the pursuits which had theretofore occupied his attention; the testimony showing that there were impelling motives associated with life rather than with death which actuated the gifts to the son and to his wife; the testimony that there was an impelling motive associated with life rather than with death which actuated the gift to the sister-in-law, Mrs. Chadwick; the testimony that there was a desire on the part of the donor to attain objects desirable to him during his life, as distinguished from a distribution of his estate as at his death—cannot be disregarded.

Viewing this evidence in the light of the tests and principles stated in the cases above cited, we have no hesitation in holding that it constituted substantial evidence to sustain the findings that the gifts were not made in contemplation of death.

The judgment is affirmed.