## LLEWELLYN v. UNITED STATES.

### No. 1620.

District Court, D. Tennessee, at Chattanooga. Oct. 22, 1929.

Whitaker & Whitaker, of Chattanooga, Tenn., for plaintiff.

Geo. C. Taylor, U. S. Atty., and Wilbur W. Piper, Asst. U. S. Atty., both of Knoxville, Tenn.

TAYLOR, District Judge.[1]

Some eighteen months before the death of Morgan Llewellyn, which occurred February 17, 1920, he divided $40,000 of his estate between his children and his wife.

After his death, the defendant included this amount as a part of the gross estate in computing the estate tax, and collected the sum of $1,263.84, as shown by stipulation of the parties, more than would have been collected had this amount been deducted from the gross estate. It was paid under protest.

This matter is before me for an application of section 402(c) of the Revenue Act of 1918 (40 Stat. 1097) to the facts, and raises two questions: (a) Was the amount involved a material part of decedent's estate, and (b) was the division màde in contemplation of death?

An examination of the evidence discloses clearly that $40,000 was a material part of decedent's property, and this fact is not seriously controverted.

In deciding the question whether the transaction involved was in contemplation of death makes it necessary to look for a definition of this term and apply that definition to the facts of the instant transaction. In the case of Shwab v. Doyle (C. C. A. 6th Circ.) 269 F. 321, 328, which case reviews the decisions covering the question in point, quotes or refers to definitions of this phrase varying in exact expression, Judge Knappen, delivering the opinion of the court, used the following language: "On principle, and without present reference to authority, the ultimate question concerns the motive which actuated the grantor; that is to say, whether or not a specific anticipation or expectation of her own death, immediate or near at hand (as

distinguished from the general and universal expectation of death some time), was the immediately moving cause of the transfer." In the Doyle Case, the gift was absolute inter vivos, and, as in the present case, claimed by the government to have been testamentary in character. So then the only question of fact involved here is, did Morgan Llewellyn make this division of his property actuated by a specific anticipation of his death, immediate or near at hand, as the immediately moving cause, or was he actuated by some other cause? In other words, would the transfer have been made but for his anticipation or expectation of immediate or near dissolution?

Section 202(b) of the act (40 Stat. 1060) raises a presumption of fact that this transaction, having occurred within two years of Llewellyn's death, was in contemplation of that event, and may be looked to, along with all of the evidence, in determining the question here for adjudication. Morgan Llewellyn was about 72 years of age when his intention or his actuating motive must be determined. He was free from organic disease, so far as the record discloses, but a great sufferer, at least believed himself to be in ill health. For many years he had complained of an injury to his back and resultant pains there and of headaches. There is proof tending to show that he did not have a bright outlook, was dissatisfied with life, and had expressed the belief that he would predecease his wife. This he did not do. There is evidence tending to show that after his wife's death he contemplated marrying. He died of pneumonia induced by influenza after an illness of but a few days.

I conclude from the evidence that his physical condition at the time of the transfer and his own prognosis differed slightly, if at all, from what it had been for a number of years; that one of the beneficiaries was in need of immediate financial assistance, which had been rendered to some extent theretofore, and that another beneficiary, also a child, was also in position to use to great advantage financial assistance, and that the former at least had requested aid.

It is seriously contended by defendant that the testimony of Mrs. Coleman, the first beneficiary aforementioned, to the effect that her father, Morgan Llewellyn, used the expression that his failure to equalize the various beneficiaries in the matter of gifts "might cause hard feelings later," is evidence that the gifts, at least in so far as they were intended to place all the beneficiaries on equal footing, in other words, to the extent of $20,-

---

[1] Disqualification waived.

000, were made in contemplation of death; that the word "later" related to after his death, and that therefore he divided $20,000 of his estate to prevent "hard feelings" among his survivors when he should die. I do not agree with this insistence. It is quite clear that, if in using such an expression he had in mind that the ill feelings might arise after his death, he contemplated dying, but so do we all. As said by Judge Knappen in the Doyle Case, supra, that is a general and universal expectation. That he expected to die in the "immediate or near" future does not follow.

I conclude that the distribution was actuated, in so far as Mrs. Coleman and Frank Llewellyn are concerned, by natural parental impulses to relieve children whenever possible of financial or other distress, and that the distribution, in so far as the beneficiaries who were not in real need of financial assistance are concerned, he was actuated or motivated by a sense of justice such as should be present in all similar transactions. I do not think it can be said from this record that the situation here existing would have been different had deceased been a man of youth and vigor.

An order in accord with this view may be entered.