## KENGEL v. UNITED STATES.

### No. K–470.

Court of Claims.
May 2, 1932.

Richard B. Barker, of Washington, D. C. (David J. Hubar, of Detroit, Mich., on the brief), for plaintiffs.

Charles B. Rugg, Asst. Atty. Gen. (Joseph H. Sheppard and William T. Sabine, Jr., both of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

BOOTH, Chief Justice.

On May 29, 1925, the plaintiffs paid to the Commissioner of Internal Revenue $93,994.-35 federal estate taxes assessed by the commissioner against the estate of Joseph Kengel, deceased. On June 1, 1925, the plaintiffs paid a small deficiency assessment of $5.58. Of the total amount of estate taxes paid, $91,-255.53 was assessed and paid because the commissioner included in the estate tax as-sessment the then value of certain real property in the city of Detroit deeded by the decedent to his two sons, John A. and Frank H. Kengel, on May 12, 1924, the property being valued at $1,300,000, the commissioner contending that decedent transferred said property to his sons in contemplation of death. This suit is for the recovery of the tax paid as above.

No jurisdictional question is involved. We cite the provisions of the Revenue Act applicable, as follows:

"Sec. 401. That, in lieu of the tax imposed by Title IV of the Revenue Act of 1918, a tax equal to the sum of the following percentages of the value of the net estate (determined as provided in section 403) is hereby imposed upon the transfer of the net estate of every decedent dying after the passage of this Act, whether a resident or nonresident of the United States: * * *

"10 per centum of the amount by which the net estate exceeds $1,000,000 and does not exceed $1,500,000. * * *

"Sec. 402. That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—* * *

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death (whether such transfer or trust is made or created before or after the passage of this Act), except in case of a bona fide sale for a fair consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such a consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title." (Revenue Act of 1921, 42 Stat. 227, 277, 278.)

The Treasury Regulations in force and applicable are articles 17 and 18 of Regulations 63, and contain the following provisions:

"Art. 17. *Nature and Time of Transfer.* —A transfer made by the decedent at any time, and in any manner, is taxable when made in contemplation of or intended to take effect in possession or enjoyment at or after his death, provided it was not a bona fide sale for a fair consideration in money or money's

worth. To constitute such a sale it must have been made in good faith, and the price must have been a fair equivalent, and reducible to a money value.  *  *  *

"Art. 18. *Nature of Transfer.*—The words 'in contemplation of death' do not mean, on the one hand, a general expectation of death such as all persons entertain, nor, on the other, is the meaning limited to an expectation of immediate death. A transfer, however, is made in contemplation of death wherever the person making it is influenced to do so by such an expectation of death, arising from bodily or mental conditions, as prompts persons to dispose of their property to those whom they deem proper objects of their bounty. Such a transfer is taxable, although the decedent parts absolutely and immediately with his title to and possession and enjoyment of the property.  *  *  * "

The case is one of fact. United States v. Wells, 283 U. S. 102, 51 S. Ct. 446, 15 L. Ed. 867, and Heiner v. Donnan, 52 S. Ct. 358, 76 L. Ed. ——, decided by the Supreme Court March 21, 1932. It was said in the Wells Case: "It is apparent that there can be no precise delimitation of the transactions embraced within the conception of transfers in 'contemplation of death,' as there can be none in relation to fraud, undue influence, due process of law, or other familiar legal concepts which are applicable to many varying circumstances. There is no escape from the necessity of carefully scrutinizing the circumstances of each case to detect the dominant motive of the donor in the light of his bodily and mental condition, and thus to give effect to the manifest purpose of the statute." Page 119 of 283 U. S., 51 S. Ct. 446, 452.

Joseph Kengel, a naturalized citizen of the United States, was born in Germany on August 15, 1831; he came to this country in his early twenties, taking up a permanent residence in Detroit, Mich., in the year 1854. A few years later he established in Detroit a carriage business and thereby laid the foundation of his subsequent fortune. In 1865 the decedent began to purchase real estate in the city and at the time of his death owned contiguous parcels of the same which came to be known as the Library Park Hotel property, valued at $1,300,000. Toward the development, care, and management of this property Mr. Kengel gave almost his exclusive attention, and in its ownership manifested conscious pride and concern. In 1895 Mrs. Kengel, the wife of the decedent, died at their home in Detroit, and soon thereafter Mr. Kengel retired from the carriage business and removed from Detroit to a country

home he constructed on Lake St. Clair at Grosse Pointe, near Mt. Clemens, Mich., some twenty miles from Detroit. On May 31, 1924, Joseph Kengel died intestate at his country home, having attained the age of ninety-two years nine months and sixteen days. He left surviving him two sons, John A. Kengel, since deceased, and Frank H. Kengel, and certain grandchildren—children of a deceased son and daughter—as his heirs at law. Joseph Kengel, the plaintiffs' father, enjoyed remarkably good health; he was rarely ever ill, and his mental faculties remained unimpaired. He was active in the management of his business affairs, devoting much time thereto until within a few months of his death. On March 5, 1924, the decedent contracted a heavy cold which confined him to his house, an illness which at its beginning did not alarm him or his family. In a few days, however, his unimproved condition caused his housekeeper to call in a doctor to see him, and on March 9, 1924, the doctor found him in bed suffering from an inguinal hernia of the right side, as the physician then diagnosed the case, which, notwithstanding his enfeebled appearance and condition, the doctor did not regard as dangerous. On March 17, 1924, this same doctor called again and reported decedent's condition as not alarming. On March 29, 1924, the doctor reported his patient as suffering from bronchitis, weak heart, and severe pains in his left side, which because of his advanced age might prove serious. During the early days of April, 1924, the decedent's bronchitis improved but his physical condition indicated intense weakness, and he was confined to his bed continuously. On May 12, 1924, decedent's son Frank Kengel and an intimate friend, a Mr. Church, consulted two eminent surgeons, and the following day, accompanied by one of them, a Dr. Allen, drove out to his father's home. Dr. Allen found the decedent in a very serious condition, both physically and mentally, i. e., drowsiness and an indisposition to be disturbed characterized his mentality, and physically he was very weak. The doctor diagnosed his case as cancer of the stomach, an affliction which in the doctor's opinion had existed for at least six months and for which he could propose no remedy, saying he would probably not survive for more than two or three weeks.

Without going into additional details, it is sufficient at this point to observe that on May 31, 1924, Joseph Kengel died. On May 5, 1924, Frank Kengel caused two deeds to be drawn up, conveying to him and his brother, John A. Kengel, an undivided one-half

interest in the Library Park Hotel property, the realty involved in this litigation. On the same day and date Frank Kengel, in company with Mr. Church, visited Joseph Kengel at his home to secure the execution of the deeds. Joseph Kengel, the father, declined at this time to sign the deeds, saying he wished a few days to think the matter over. While the record contains testimony contrary to the facts just stated and witnesses do fix the date of May 5, 1924, as the date when the deeds were finally executed, another witness, a trained nurse in charge on that date, fixes the same definitely, and this testimony is corroborated by a sworn answer filed by John A. and Frank Kengel in a chancery proceeding brought against them by the grandchildren of the decedent, in which the date May 5, 1924, is expressly fixed as stated in this opinion and May 12, 1924, given as the date of execution. In addition to this, the record indisputably establishes that the deeds were not executed on the date of the son's first visit to his father and that the father declined at first to sign them; and while the deeds bear a notarial acknowledgment as of May 5, 1924, they were not recorded until May 28, 1924, three days prior to the father's death, and we think from the record were in fact signed on May 12, 1924. The matter is not one of such vital importance as the plaintiffs accord it, for aside from all other facts there can be no doubt that the sons regarded the father on the date when the deeds were signed as rapidly approaching his demise.

Preceding May 12, 1924, and on April 3, 1924, at a time when Joseph Kengel was fatally ill, he transferred by deed to his son, Frank, certain other parcels of land located in the states of Michigan and Missouri, with instructions then given to Frank to distribute the lands deeded equally among his grandchildren, and in a court proceeding Frank A. Kengel admitted the above facts.

There can be no doubt that the relations between Joseph Kengel and his two sons were cordial, intimate, and confidential. The father had expressed a desire for his sons to have the Library Park Hotel property, and there is evidence in the record that he contemplated deeding it to them, but he never did so until his final illness, notwithstanding a man of his unusually advanced age, in full possession of his faculties, must have known and appreciated the seriousness of even slight illness. The way was open by either will or deed to accomplish his desire. It is abundantly proved that Joseph Kengel was a frugal and astute business man; he knew full well the value of property and the consequences which might follow his parting irrevocably with title to the same. Real estate constituted practically all his estate and during all the years of his long life he retained title to it in his own name, and as we view it must have appreciated what it meant to him to deed it to another; a transaction of such consequences to such an active, careful, and prudent man justifies the inference, to say the least, that the time had arrived when he confidently believed he would have no further use for it.

The findings, we think, accurately reflect the facts of the case. We will not discuss them in all their relationship to the transaction involved. It is sufficient to say that the deeding of the property included by the commissioner in the decedent's estate under the circumstances and at the time it was deeded exacts of the court the necessity, as was said in the Wells Case, supra, "of carefully scrutinizing the circumstances of each case to detect the dominant motive of the donor in the light of his bodily and mental condition." Subjecting the facts to the rule thus established, we find an unusually elderly man who all his life exerted a maximum of industry and intelligence in the acquirement of large and extremely valuable real estate holdings, maintaining watchful care in the management and control of the same by personal supervision, never parting with the title or making any disposition whatever of it during his life to his heirs, and finally, when over ninety-two years of age, fatally ill, confined to bed, and under the care of doctors, deeds to his sons realty constituting 86 per cent. of his entire estate, and to his grandchildren additional realty of a value not shown. This is, we think, clearly evidentiary that the transfers were made in contemplation of death, and that the "dominant motive" in thus without other consideration than love and affection in making said transfers was his consciousness that he was afflicted with a fatal malady. A man of the type and mental sturdiness of Joseph Kengel did not need to be told that he was fatally ill.

We think the petition should be dismissed. It is so ordered.