## GREGG v. UNITED STATES.

No. 42712.

Court of Claims.
Jan. 6, 1936.

150

Albert A. Jones, of Washington, D. C. (F. E. Scott, of Washington, D. C., of counsel), for plaintiff.

J. H. Sheppard, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen., for the United States.

Argued before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

**WILLIAMS, Judge.**

The decedent, John W. Gregg, on February 5, 1929, transferred to Wallace E. Gregg, his son and only child, 131½ acres of land in Prince Georges county, Md., of a value of $110,000. The transfer was made by deed of conveyance and was without consideration in money or money's worth, being a gift pure and simple. On February 18, 1929, two weeks after making the transfer, the donor died. The value of the land was included by the Commissioner of Internal Revenue as a part of decedent's estate upon which a Federal estate tax of $5,500 was imposed and collected.

Claim for refund was duly filed by the executrix of decedent's estate upon the ground that the conveyance was not made in contemplation of death. The claim was disallowed by the Commissioner of Internal Revenue and suit thereon has been timely instituted. The sole issue is whether the transfer of the land in question was made by the decedent in contemplation of death within the meaning of section 302 of the Revenue Act of 1926 (44 Stat. 9, 70):

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated— * * *

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth."

■■ The determination of the Commissioner of Internal Revenue that the transfer in question was made in contemplation of death is presumptively correct. It must be sustained unless it has successfully been rebutted by the plaintiff. What constitutes "contemplation of death" within the meaning of the taxing statute is defined in United States v. Wells, 283 U.S. 102, 51 S.Ct. 446, 452, 75 L.Ed. 867. It was there stated that "the words 'in contemplation of death' mean that the thought of death is the impelling cause of the transfer." It was further stated that "It is contemplation of death, not necessarily contemplation of imminent death, to which the statute refers. It is conceivable that the idea of death may possess the mind so as to furnish a controlling motive for the disposition of property, although death is not thought to be close at hand," and that, "The question, necessarily, is as to the state of mind of the donor." Whether the transfer in question was made in contemplation of death must be determined under the tests laid down by the Supreme Court.

■■ The plaintiff at the time the transfer in question was made was 85 years of age. He came from a long-lived family and often expressed the belief that he would live to be a hundred years old. He had enjoyed robust health until a few days before his death, and was in close touch with the details of the large business enterprise which he had built up from a small beginning. He was in fact the actual, although not the nominal, manager of the business. Shortly before his last illness he had ordered some new machinery and equipment. Before going to the hospital he instructed his foreman to delay the installation of this machinery until he got back on the job. The plaintiff contends that these facts completely refute the idea that at the time the transfer was made the decedent had changed his characteristic attitude of optimism and hopefulness toward life and then believed or had reason to believe that he was in a precarious condition of health which might result fatally in the near future.

It does not follow that because the plaintiff in the days and years prior to his last illness, when he was in perfect health and in the full tide of his successful business career, thought life "eternal," as one of the witnesses stated, that his mental attitude remained unchanged at the time the transfer involved was made. He was then suffering the severe pains incident to acute mastoiditis and was on the eve of entering the hospital for an operation which an X-ray examination had disclosed was immediately necessary. He was, as shown by the record, a man of keen discernment and rugged common sense, and could not help but realize the seriousness of his condition and have apprehensions that this operation, always dangerous, might result fatally to a man of his advanced age. That the decedent's physician did not explain to him the nature of the operation, or its attendant danger, and that the decedent expressed no apprehension as to its outcome is an important fact to be considered with the other facts and circumstances shown, but it is not conclusive as to the decedent's

state of mind at the time the transfer was made and of itself is insufficient to overcome the presumption that the transfer was made in contemplation of death. Unless all human experience be discarded, the inference, in the absence of most convincing proof to the contrary, is inescapable that a man 85 years of age stricken with a serious ailment requiring a delicate and dangerous operation must have grave apprehension as to its successful outcome. If in this situation he transfers a material part of his property without consideration, as the decedent in this case did, to one to whom the property would naturally go in the course of time, the conclusion manifestly must be that the transfer was in the nature of a final disposition or distribution thereof, and was made in contemplation of death.

The plaintiff has failed to show any motive for the transfer consistent with the purposes of life. The decedent had owned the tract of land involved for more than 30 years. It had never been profitable and some two or three years before the transfer its use in the decedent's business had been discontinued. The decedent had often indicated a desire to build a house for himself on the land but never did so. He had also from time to time during the last four or five years of his life expressed a willingness to transfer the tract to his son in the event he became financially able to pay the taxes on the property, with the possibility that the son might build a home for himself thereon. This was not done for the apparent reason that the son who was working for his father at $35 per week never became financially able to maintain the property. This was the situation on February 5, 1929, when the property was transferred. It cannot be said that the transfer when made was the carrying out of plans long made by the decedent, as his expressed willingness to transfer the property to his son was on the condition that the son became financially able to pay the taxes on the property. The son was no more able to pay the taxes on the property when the transfer was made than he had been before that time—he was still working for the decedent at $35 per week and so far as the record shows possessed no

property whatever. Neither was the transfer made to the son in the expectation that he would build a home on the property as the decedent before the transfer was negotiating for the sale of the entire tract, which negotiations shortly after decedent's death terminated in the giving of options by the son to one Muma for the purchase of the entire tract.

The contention is made that in addition to the motives mentioned the decedent made the transfer in order to be relieved from the burden of the pending negotiations for the sale of the property and the signing of the deed in the event a sale of the property materialized. The facts do not sustain this contention. The decedent was at no time burdened with the negotiations looking to the sale of the property, as all these negotiations had been handled and were then being handled by his representative Allen. It does not appear that he at any time conferred with prospective purchasers or personally took part in any negotiations in respect to the proposed sale. Throughout the entire negotiations Allen, while he was the agent of the decedent, conferred with the son Wallace and not with the decedent in reference to proposed sales. The transfer of the property to the son therefore relieved the decedent of no burdens in respect to pending negotiations for the sale of the land, and obviously the execution of the deed to the purchaser in case the sale was consummated would have entailed no greater burden on the decedent than did the execution of the deed to his son.

The question as to whether the transfer involved was in contemplation of death is one of fact. The evidence adduced by the plaintiff in support of its contentions that the transfer was not in contemplation of death but was actuated by other motives consistent with the thought and purposes of life is not sufficient to outweigh the presumptive correctness of the Commissioner's determination that it was so made. We have therefore made an ultimate finding that it was made by the decedent in contemplation of death.

It follows that the petition must be dismissed. It is so ordered.