**HARRIS TRUST & SAVINGS BANK et al.
v. UNITED STATES.
No. 43188.**

Court of Claims.
Nov. 6, 1939.

Albert H. Veeder, of Chicago, Ill. (Francis E. Baldwin and Henry Veeder, both of Chicago, Ill., on the briefs), for plaintiffs.

J. H. Sheppard, of Washington, D. C., and Samuel O. Clark, Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, Sp. Assts. to Atty. Gen., on the briefs), for the United States.

Before WHALEY, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHITAKER, Judges.

WHITAKER, Judge.

The question here involved is whether or not a certain trust executed by the decedent on June 12, 1930, was executed in contemplation of death, in the sense that phrase is used in Section 302 (c) of the Revenue Act of 1926, 44 Stat. 70, 26 U.S.C.A. § 411(c).

On this date of June 12, 1930, the decedent executed an irrevocable trust to the Chicago Title and Trust Company, as trustee, providing for the transfer to it, in trust, of municipal bonds of the approximate face value of $850,000. This was approximately equal to the value of the property remaining in the decedent's hands at the time of his death.

At the time of the execution of the trust the decedent was about 70 years of age and was suffering from arteriosclerosis and myocardial degeneration. He died on January 22, 1933, about two years and six months after the execution of the trust, from angina pectoris. At the time of the execution of the trust instrument there were no symptoms of this disease.

Upon discovering that decedent was suffering from arteriosclerosis and myocardial degeneration, his physician put him to bed and allowed him to take no exercise whatever, not even to the extent of going to the bathroom. He was so confined for six weeks. After the lapse of this time he was permitted to get up and gradually increase his physical activities, and after several weeks more he was permitted to go to his summer home in Wequetonsing, Michigan, and to resume the playing of golf, of which he was very fond.

The trust was executed while the decedent was under the care of his physician, but apparently after the first six weeks of absolute quiet.

Although his physician had prescribed such a complete cessation of physical activity, the decedent, to all outward appearances, at any rate, was not at all alarmed about his physical condition; but, on the contrary, treated it lightly, and insisted that it was foolish for him to be put to bed.

Myocardial degeneration is a curable disease. The treatment for it is complete rest.

The execution of this trust was not first conceived while the decedent was confined to his bed in 1930, but had been previously discussed by him with members of his family, his lawyers, and others as far back as 1926 or 1927, at a time when he was in good health.

In 1926 or 1927 his declared motive for contemplating the execution of a trust instrument was twofold. It was, first, in order to relieve himself of the burden of keeping track of his securities, and to insure an income for himself and family during his lifetime. Secondly, it was for the purpose of putting the management of his property after his death in the hands of those whom he considered more capable than his wife and daughter, and thus to insure an income for them after his death.

When he actually executed the trust the only reason he assigned for doing so was that he desired to shift from himself to others who had the necessary statistical facilities the burden of keeping track of the interest payments and the substitutions that should be made from time to time. No doubt he was actuated in part also by the motive expressed by him in 1926 or 1927, which was to put the management of his property after his death in the hands of those he considered more capable than his wife and daughter, and to insure for them an income after his death. Not only is this a fair inference from the fact he had had such a motive when he had previously contemplated such a trust, but also from the fact that the instrument executed accomplished this purpose.

These are the essential evidentiary facts from which the ultimate fact and conclusion must be drawn.

This case is not free from doubt, but after careful consideration we conclude that the thought of death was the impelling motive for the creation of the trust. We are driven to this conclusion by these considerations: In 1926 or 1927 the decedent, when in good health, contemplated the creation of a trust such as he later executed. At that time he was actuated by two motives. One was to relieve himself of the burden of administering his securities, of determining when to discard some and to substitute others, etc. This motive was not induced by thoughts of death. The other was to put his property in the hands of those whom he considered more competent to handle it after his death than his wife and daughter. This motive was induced by thoughts of death. Which was then the dominant or controlling motive, we do not know.

Both motives combined, however, were not sufficient to induce him at that time to carry out his contemplated plan. He did nothing about it for three or four years and not until he had developed a heart disease, which necessitated absolute physical inactivity, even to the extent of not getting out of bed to go to the bathroom. He was in bed with this disease for six weeks. Shortly after getting up, on a regimen of restricted activity, he executed the trust contemplated three or four years before. He took action only when he had developed a heart trouble, not necessarily fatal, but which had condemned him to a six-weeks' period of absolute physical inactivity.

This action is inconsistent wth the idea that he treated lightly his ailment. In our opinion the thought that tipped the scales and finally induced him to do the thing he had been contemplating for three or four years was this heart trouble.

The fact that he died from a heart trouble unconnected with the one from which he was then suffering seems to us immaterial. The material consideration is the effect created on decedent's mind by the heart trouble with which he was then suffering. This we believe was the inducing motive for the creation of the trust. If so, under the authority of Wells v. United States, 69 Ct.Cl. 485, 39 F.2d 998; United States v. Wells, 283 U.S. 102, 51 S.Ct. 446, 75 L.Ed. 867; and Becker v. St. Louis Union Trust Co., 296 U.S. 48, 56 S. Ct. 78, 80 L.Ed. 35, the trust must be held to have been created in contemplation of death. And this is true, we think, notwithstanding the fact that one of his motives was consistent with thoughts of life, because the motive that impelled him at the time, the dominant motive, was one induced by the precarious condition of his health.

Plaintiffs are not entitled to recover, and the petition is therefore dismissed. It is so ordered.