**Dan B. HOOVER and Ed Hoover, Jr., Executors of The Estate of Bragg Hoover, Deceased**

v.

**UNITED STATES.**

No. 65–58.

United States Court of Claims.
Jan. 20, 1960.

Arthur Glover, Amarillo, Tex., for plaintiffs.

June A. Murray, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. Lyle M. Turner, Washington, D. C., was on the brief.

LITTLETON, Judge (Retired).

The principal question here is whether certain gifts made by decedent, Bragg Hoover, to her four children during the period of three years before her death in 1952 were made "in contemplation of death." The Commissioner of Internal Revenue included such gifts in the gross estate of decedent for estate tax purposes, pursuant to Sections 811(c) (1) (A) and 811(l) of the Internal Revenue Code of 1939, as amended.[1]

Section 811(c) (1) (A) provides:

"§ 811. Gross estate. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—* * *

"(c) Transfers in contemplation of, or taking effect at, death.

"(1) General rule. To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise—

"(A) in contemplation of his death; * * * *"

Section 811(l) provides:

"Contemplation of death. If the decedent within a period of three years ending with the date of his death (except in case of a bona fide sale for an adequate and full consideration in money or money's worth) transferred an interest in property, relinquished a power, or exercised or released a power of appointment, such transfer, relinquishment, exercise, or release shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of subsections (c), (d), and (f); but no such transfer, relinquishment, exercise, or release made prior to such three-year period shall be deemed or held to have been made in contemplation of death."

Bragg Hoover, the widow of H. E. Hoover, a resident of Canadian, Texas, died August 14, 1952, at the age of almost 89 from a cerebral hemorrhage, leaving two sons, Dan B. Hoover, aged 67, H. E. (Ed) Hoover, Jr., aged 59, and two daughters, Louise Hoover, aged 56, and Vashti Hoover Garver, aged 51. Decedent's husband, H. E. Hoover, died of cancer induced by radium burns on March 21, 1945, at the age of 83.

The two sons, Bragg Hoover's executors, reported a gross estate of $130,-388.85, and defendant assessed a deficiency based on the inclusion in the estate of an additional $132,195.72, the

1. 26 U.S.C. (1952 ed.) §§ 811(c) (1) (A) and 811(l).

amount of certain gifts made by decedent to her two sons and two daughters which were completed within three years of her death. The deficiency has been paid, a claim for refund filed and rejected, and this suit brought to recover the amount paid, with interest.

In 1889, decedent moved to Canadian, Texas, with her husband, an attorney engaged in the general practice of law, who also had many business interests, including lumber, water, light and power, real estate, and oil and gas leases. Except for some help from his son Dan, he did not permit his wife or children to participate in his business affairs. He paid the costs of educating his children, but gave them only allowances sufficient for that purpose. Decedent endeavored from time to time to have him do more for the children out of his wealth, and whenever she could, she sent them extra money. At his death in 1945, decedent's husband left property valued at $591,000, which he devised to his four children in equal parts. By his will, he prohibited the sale or mortgage of the real estate for a period of ten years after his death. One-half of his property descended to his wife under the laws of Texas. About a year before he died, and because of his illness, his sons took over the management of his affairs, which they continued until his death and throughout their mother's lifetime. Both Dan and Ed are practicing lawyers in Canadian. Ed, Louise and Vashti (except for three years) have always lived with their parents.

December 24, 1946, twenty-one months after her husband's death, decedent began making gifts to her children, not in contemplation of death, but for the reasons hereinafter set forth. On that date, she conveyed real estate which had a total value of $11,345. February 3, 1947, and January 5, 1948, she gave $3,000 to each child, and May 28, 1949, she gave them each $1,500. April 4, 1949, she conveyed to her four children her interest in certain real estate for recited cash consideration of one dollar and a vendor's lien note of $97,376.39, bearing 2% interest, due five years after date, and secured only by the land.

Within the three years immediately preceding her death, between August 9, 1949, and July 16, 1952, decedent gave a total of $132,195.72 in equal parts to her four children in gifts as follows:

| Date of gift | Kind of gift | Amount to each child | Total gift |
| --- | --- | --- | --- |
| August 9, 1949 | Credit on note | $ 7,500 | $ 30,000 |
| August 10, 1949 | Cash | 1,500 | 6,000 |
| March 4, 1950 | Cash | 1,500 | 6,000 |
| June 20, 1950 | Cash | 1,500 | 6,000 |
| February 6, 1951 | Cash | 1,500 | 6,000 |
| December 10, 1951 | Credit on note | 10,000 | 40,000 |
| December 11, 1951 | Cash | 1,500 | 6,000 |
| January 2, 1952 | Cash | 3,000 | 12,000 |
| May 25, 1952 | Cash | 3,000 | 12,000 |
| July 11, 1952 | Cash | 2,048.93 | 8,195.72 |
| Total | | 33,048.93 | 132,195.72 |

Under Section 811(*l*), quoted above, the gifts made by decedent on and after August 9, 1949, are deemed to have been made in contemplation of death, that is, there was a prima facie presumption to that effect, and their value is includible in the gross estate, unless plaintiffs have shown that the immediate and moving

cause of the gifts was not contemplation of death, but that such gifts were motivated by other reasons or considerations.

The leading authority interpreting the Federal contemplation of death provision is United States v. Wells, 1930, 283 U.S. 102, 51 S.Ct. 446, 75 L.Ed. 867. In that case the Supreme Court affirmed a determination of this court that gifts made by decedent within two years of his death at 73 of severe intestinal ulceration were not made in contemplation of death. The Court declared the transferor's motive to be the decisive factor. The Court said at pages 118–119 of 283 U.S., at page 452 of 51 S.Ct.:

> " * * * The purposes which may be served by gifts are of great variety. It is common knowledge that a frequent inducement is not only the desire to be relieved of responsibilities, but to have children, or others who may be the appropriate objects of the donor's bounty, independently established with competencies of their own, without being compelled to await the death of the donor and without particular consideration of that event. There may be the desire to recognize special needs or exigencies or to discharge moral obligations. The gratification of such desires may be a more compelling motive than any thought of death."

In the Wells case, although decedent had suffered considerably from asthma and inflammation of the large intestine, both of which diseases required his hospitalization during the last two years of his life when the gifts in question were made, the Supreme Court affirmed this court's conclusion that plaintiffs had overcome the statutory presumption and definitely established the fact that "the immediate and moving cause of the transfers was the carrying out of a policy long followed by decedent in dealing with his children of making liberal gifts to them during his lifetime." 39 F.2d 998–1011, 69 Ct.Cl. 485, 513–514.[2]

In Griffith v. United States, 32 F.Supp. 884, 91 Ct.Cl. 240, the court found that the record disclosed that the paramount considerations in decedent's mind were the particular concern which he felt for his invalid daughter and the assurance of an adequate income for himself in later years, and that these were "the dominant motives which impelled the decedent to act, and any other considerations that might have occurred to him were purely incidental." 32 F.Supp. at page 888, 91 Ct.Cl. at page 248.

In Harris Trust and Savings Bank v. United States, 29 F.Supp. 876, 90 Ct.Cl. 17, although decedent, when in good health, contemplated the creation of the trust in question in order to relieve himself of the burdens of managing his property and in order to put his property in the hands of those most competent to manage it, the court found that the trust was created in contemplation of death because decedent did not in fact create it until three or four years after he had conceived the idea, at which time he had developed a serious heart disease, and the court concluded that "in our

2. Since Wells, this court has dealt with the meaning of "contemplation of death" in Kengel v. United States, 57 F.2d 929, 934, 74 Ct.Cl. 529, Meyers v. United States, 2 F.Supp. 1000, 77 Ct.Cl. 429, Gregg v. United States, 13 F.Supp. 147, 82 Ct.Cl. 350, United States Trust Co. v. United States, 23 F.Supp. 476, 87 Ct. Cl. 721, Harris Trust and Savings Bank v. United States, 29 F.Supp. 876, 90 Ct.Cl. 17, Griffith v. United States, 32 F. Supp. 884, 91 Ct.Cl. 240, Russell v. United States, 38 F.Supp. 438, 93 Ct.Cl. 675, and Stanley v. United States, 46 F.Supp. 988, 97 Ct.Cl. 230. Only in the United States Trust Co. and Griffith cases did the court find the gifts in question not to have been made in contemplation of death.

The Tax Court has decided numerous cases involving the contemplation of death provision. See, for example, the recent cases of Estate of Casey, 25 T.C. 707, Estate of Sheldon, 27 T.C. 194, Estate of Want, 29 T.C. 1223, and Estate of Holding, 30 T.C. 988, in all of which that court held the gifts in question not to have been made in contemplation of death within the meaning of the statutes and on the facts shown.

opinion the thought that tipped the scales and finally induced him to do the thing he had been contemplating for three or four years was this heart trouble." 29 F.Supp. at page 880, 90 Ct.Cl. at page 26.

In Russell v. United States, 38 F.Supp. 438, 93 Ct.Cl. 675, even though the court found that decedent "desired, as every male parent does who has built up a successful business by hard work and diligence, to have his sons enter the business and to carry it on in future years," 38 F.Supp. at page 447, 93 Ct.Cl. at page 692, it held that "when it is taken into consideration that the decedent made no provision for his family, with the exception of the small amounts given to his sons and daughter, and no provision for his wife, previous to his sudden affliction, and then, after his second stroke, disposed of over half of his entire estate, it is impossible to arrive at any other conclusion, taking his mental and physical condition into consideration, than that the thought of death was the impelling motive for the transfers, thereby avoiding testamentary dispositions." 38 F. Supp. at page 448, 93 Ct.Cl. at pages 694–695.

In United States Trust Co. v. United States, 23 F.Supp. 476, 87 Ct.Cl. 721, decedent at the age of 67 made her will at the same time as she declared in writing her intention to create the trust in question. Although her health began to fail two months after she created the trust, and she died six months thereafter, the court found that at the time she executed the trust instrument she had no reason to suspect the acute illness of

which she subsequently died, and that her paramount desire was to conserve her property, provide for her necessities and distribute it equitably among her heirs.

These cases show that the force of factors which indicate life motives may be overcome by facts which show contemplation of death, and *vice versa*.

In the case at bar our task is to determine in the light of all the facts and circumstances of the case which motive was dominant in impelling decedent to make the gifts.

The Tax Court, in Estate of Johnson, 10 T.C. 680, 688, set forth a list of some of the "circumstances to be considered and weighed in determining what was the dominant motive of the decedent in making *inter vivos* transfers." The court stated some of these factors to be age, health, nature and disposition of decedent, the interval between the transfers and death, the proportion of decedent's property transferred, decedent's relationship to the donees, whether the transfers were a part of a general testamentary scheme, whether decedent had a long established gift-making policy or desired to enjoy vicariously the donees' enjoyment of the property, whether decedent desired to escape the burden of managing the property, and whether decedent desired to avoid estate taxes.

■ Among the other factors to be considered which have been cited by the courts, and which we think is an important one, is the desire to discharge a moral obligation. United States v. Wells, supra, 283 U.S. at page 119, 51 S.Ct. at page 452; Estate of Casey, 25 T.C. 707.[3]

---

**3.** Other factors which have been cited by the courts have been the desire to avoid income taxes. Becker v. St. Louis Union Trust Co., 296 U.S. 48, 56 S.Ct. 78, 80 L.Ed. 35, Vaughan v. Riordan, D.C., 280 F. 742, Safe Deposit & Trust Co. of Baltimore v. Tait, D.C., 3 F.Supp. 51, Willcuts v. Stoltze, 8 Cir., 73 F.2d 868, Estate of Sheldon, supra; the natural desire to aid one's children, Llewellyn v. United States, D.C., 40 F.2d 555, Delaware Trust Co. v. Handy, D.C., 53 F. 2d 1042, or to make them independent,

Becker v. St. Louis Union Trust Co., supra; the desire to reward one's sons for working in the family business, Off v. United States, D.C., 35 F.2d 222, 227, or to induce others to return from a distance to take up one's business, Rea v. Heiner, D.C., 6 F.2d 389, Willcuts v. Stoltze, supra; decedent's plans for the future, Commissioner of Internal Revenue v. Nevin, 3 Cir., 47 F.2d 478; decedent's continued active interest in former pursuits, Willcuts v. Stoltze, supra; decedent's desire to put the property out-

■ Decedent here, a woman of 86 when she made the first of the gifts in question soon after her husband's death, had a cheerful disposition and never complained of her illnesses. Her principal interest in life was her children, to whom she was deeply devoted. She was generally active and was an active member of the Women's Christian Temperance Union, whose meetings she attended regularly until the last two years of her life. She was fond of playing cards, and she played often until the last two months of her life. She also read much and liked visitors and friendly arguments. She did no cooking or general housekeeping, for which a maid was employed.

She suffered some illness during the last ten years of her life. In 1942, cataracts were removed from her eyes. In 1948, a cancer was removed from her abdominal wall, but she suffered no recurrence thereof. She also suffered other minor discomforts, and had one or two episodes of high blood pressure which medical science controlled.

The facts relative to decedent's disposition are not sufficient in themselves to indicate that death was not contemplated. In Stanley v. United States, 46 F.Supp. at page 991, 97 Ct.Cl. at page 237, this court found that:

"Decedent was of a cheerful disposition and took an active interest in her household until a short time prior to her death. She was a Christian Scientist and at no time did she discuss death or in any way indicate that she expected to die from her illness. Until shortly before her death she was planning for the future, contemplating the education of her grandson, and making plans for Christmas."

Yet the court held upon all the facts in that case that the gift of property which she made to her husband four months before her death at 70 of a sudden heart attack was made in contemplation of death.

Decedent's physical condition was neither of such a seriousness that we can infer therefrom that it caused the idea of death to so possess her mind "as to furnish a controlling motive for the disposition of property" (Wells, supra, 283 U.S. at page 117, 51 S.Ct. at page 451), nor was it so good as to constitute that sound health from which we may infer purposes entirely associated with life, but we find other facts and circumstances which we think support the proposition that the gifts were made for life motives in this case.

Defendant emphasizes the manner in which the gifts were made, and contends that we should infer a general "tax consciousness" which would include the desire to avoid estate taxes from the admitted consciousness of gift taxes. There is no evidence of any explicit design to deplete decedent's estate in order to avoid estate taxes, and we find that the desire to minimize the incidence of gift taxes is entirely consistent with the life motive of allowing her children to have as large a proportion as possible of the money which she was giving them.

Defendant also points to the absence of a long-established gift-making policy It is true that decedent did not actually make any gifts of a size comparable with those in question until after her husband's death, only six years before her own death. However, until the death of her husband she did not have the power to make such gifts, since he controlled all of the family's financial affairs, and the record shows that it was her consistent and oft-reiterated position long prior to her husband's death that gifts should be made.

side his own control to protect it against impairment due to his weakness or foolishness, United States Trust Co. v. United States, supra, Estate of Want, supra; the desire to stabilize control of a business, Estate of Casey, supra; the existence of a long-time purpose to make the gift, Willcuts v. Stoltze, supra; and the desire to recognize special needs or exigencies, United States v. Wells, supra, Griffith v. United States, supra.

Defendant also points to the absence of any desire on the part of decedent to escape the burdens of managing the property. It is certainly true that she had never borne these burdens and could therefore have no purpose to escape them. However, since she was satisfied with the management by her two sons, it is reasonable to conclude that she preferred not to assume it. Moreover, the absence of this factor does not point in the direction of the contemplation of death. It merely requires us to look elsewhere in the facts to strengthen a life motive.

The facts and circumstances in the case convince us that decedent was motivated to make the gifts in question by her desire to discharge a long standing moral obligation, namely, the promise made by her husband many years before his death to make substantial gifts of money to each of the children, which promise he never kept. His failure to do so was long a source of disappointment to decedent, and she used the opportunity afforded by her inheritance of the property which had been under her husband's sole control during his lifetime to make the gifts which he had promised.

In 1928, decedent talked the matter over with her husband and told him about gifts of $50,000 which had been made by a neighbor to his children and grandchildren, and she declared that her husband should do the same. He agreed to do so. Later that year he told a friend, Furman Williams, that he was going to give each of his children $50,000, but he expressed his concern over what they might do with the money. He asked the advice of his son Dan as to taxes which would be applicable to such gifts, and said he intended to make the gifts to see what his children would do with them. In the succeeding years, up until one year before his death, Mr. Hoover reaffirmed to Furman Williams his intention to make the gifts, always expressing doubt as to how his children would use the money. He never made the gifts.

During Mr. Hoover's lifetime, decedent told her children that their father had often put up money to start others in business, whereas he ought to have done more for his own children. She told them that if she ever got control of any money she would give it to them so they could use it while still young enough to enjoy it. Soon after her husband's death, decedent reminded her sons that although their father had promised several times to give each of the children $50,000, he had not done so. She said she intended to fulfill his promise. Dan told his mother about the $3,000 exclusion and the $30,000 specific exemption from the gift tax laws.

Within six months after her husband's death, decedent told Furman Williams that since her husband had not kept his promise to make the gifts to the children, she was going to do it herself. She said she did not know whether to make the gifts in lump sums or at intervals, and Williams suggested that she give parcels of $10,000 or $15,000 at a time and see what the children would do with the money. She felt this to be a good suggestion.

One year and nine months after her husband's death, decedent began making gifts to her children, and she continued to do so through the six years until her own death, by which time she had given each of them about $43,000, of which about $33,000 was given during the last three years of her life.

Decedent had always been devoted to her children. They were her major interest in life. She consistently felt that they should be given more money than her husband gave them, and while he was alive and in control of the property she could only give very little. She did give them what she could. When he died, however, and she was free to follow her deep and long standing desire to give her children the money which her husband had promised them and which she believed they should have, she embarked upon the gift-giving with which we are here concerned. We find that the gratification of these desires was a much greater and more compelling motive in this case than any thought of death.

Defendant further argues that even if we find that decedent herself did not contemplate death, we should find that the gifts were made in contemplation of death because the decedent's will was substantially subordinated to her childrens', and their motive was associated with death. With respect to this contention, defendant is aided by no statutory presumption. We find that there is no evidence whatever to support the argument. The fact that her financial and business affairs were conducted by her sons gives no indication that the initiative or motivation for the gifts resided in them. The evidence indicates the contrary. The idea of making the gifts originated in decedent, who suggested it to her husband in 1928. It was nurtured by her thereafter until she was able to bring it to fruition when she gained control of the property after her husband's death. It was a natural thing that her sons would advise her with respect to the forms which the gifts were to take, and this does not in any way indicate that her will was subordinated to theirs insofar as the motivation for the gifts is concerned.

Plaintiffs in their petition claim that the estate of Bragg Hoover is entitled to a deduction of the amounts of taxes, interest, attorneys' fees and costs determined in four cases in the Tax Court against each of the Hoover children for deficiencies in gift taxes due from them as transferees of the assets of Bragg Hoover and of her estate for the taxable years 1949 and 1952. This contention is abandoned by plaintiffs in their brief, where they claim only a deduction for attorneys' fees and costs incurred in resisting the additional gift tax liabilities. These fees and costs were incurred in litigation concerning the gift tax liabilities of the Hoover children, which liabilities are separate and distinct from the liability of decedent. Internal Revenue Code of 1939, sec. 1009,[4] Mississippi Valley Trust Co. v. Commissioner of Internal Revenue, 8 Cir., 147 F.2d 186. They are not deductible under Section 812(b) (3), Internal Revenue Code of 1939,[5] since they are not claims enforceable against decedent's estate. 26 C.F.R. § 81.36.

The parties have agreed that, in computing the net estate of decedent, the regulations, 26 C.F.R. § 81.34, allow the estate a deduction for reasonable attorneys' fees and costs incurred by the executors in prosecuting the instant action.

Since the assessment of the additional estate tax by the Commissioner of Internal Revenue has not been sustained, it is unnecessary for us to deal with the question of whether plaintiffs would be entitled to deduct from their tax liability such additional inheritance taxes as would be due to the State of Texas.

The plaintiffs are entitled to judgment for the amounts of estate taxes and interest thereon which were assessed and paid on the amounts of the gifts made by decedent from August 9, 1949, to July 11, 1952, plus interest thereon as provided by law and reasonable attorneys' fees and costs incident thereto, but not for the fees and costs incident to the litigation of the gift tax liabilities of decedent's children. Judgment will be entered to that effect with the amount of recovery to be determined pursuant to Rule 38(c), 28 U.S.C.

It is so ordered.

JONES, Chief Judge and LARAMORE and WHITAKER, Judges, concur.

MADDEN, Judge, took no part in the consideration and decision of this case.

4. 26 U.S.C. (1952 ed.), § 1009.

5. 26 U.S.C. (1952 ed.), § 812(b) (3).